■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RUDOLPH GENE TESTA, Appellant. — Appeal from a judgment of the County Court of Broome County (Fischer, J.), rendered March 1, 1982, upon a verdict convicting defendant of the crime of rape in the first degree. The People's proof disclosed that on the evening of July 26, 1981, the victim, a 17-year-old prostitute, was walking home along Chenango Street in the City of Binghamton, New York, when a car approached her and the male occupants asked her if she wanted to party. She continued on and the car pulled into a driveway in front of her. Defendant, the driver, and one Steven Gordon, a passenger, left the car, told her they were police officers and were arresting her for loitering. They both grabbed her and forced her into the back seat of the car. They then drove her out of the city. She was threatened by Gordon when she attempted to leave the car. She was told to undress by Gordon and when she refused he threatened her with a broken beer bottle held close to her neck. She then undressed and Gordon climbed into the back seat, pushed her down and had sexual intercourse with her, despite her cries and her attempts to resist him. Gordon then said "switch", defendant stopped the car, and the two males changed places. Defendant then pushed her down and had sexual intercourse with her despite her cries and pleas to stop. Defendant then climbed back into the front seat. After they stopped, defendant and Gordon went outside the car with the keys and the broken bottle. After some conversation between the two men, Gordon handed her the broken bottle. She threw it out the window but Gordon picked it up, told her he had her fingerprints on the bottle and that she had just tried to kill him. The two then drove her to the Kirkwood State Police Barracks where Gordon accused her of trying to kill them. The police officers separated the three for individual interviews, obtained the victim's preliminary account of the events and sent her to a hospital for examination. After defendant was advised of his rights he made a statement which was in essential agreement with the victim's. Defendant stated that the story of the attempted murder of Gordon was fabricated since they thought no one would believe they had raped a prostitute. His statement was read into the record. He did not testify but did present four character witnesses in his defense. Before the trial, Gordon entered a plea of guilty to the rape charge. The trial court directed that this plea not be made public until the end of defendant's trial. Nevertheless, during the trial a local newspaper published the information. Defense counsel re-

quested the trial court to inquire of the jurors whether any had read that day's newspaper account relating to the trial. The jurors indicated none had. Subsequent to return of their guilty verdict, several jurors were asked by defense counsel if they had heard of Gordon's guilty plea during the trial and whether it had been discussed in the jury room. Upon receipt of positive responses, defendant moved to set aside the verdict or for a new trial. The trial court held a hearing at which various jurors testified that they had been told during the trial of Gordon's guilty plea and that it had been discussed late in the deliberations. The court denied the motion in a written decision and concluded that the jury had ample evidence to convict defendant and that the jury's information gained from a source outside the evidence was not inherently prejudicial and did not deprive defendant of a fair and impartial trial. Defendant's motion to dismiss in the interests of justice was also denied. The court imposed a sentence of from two to six years' imprisonment. This appeal ensued. There must be a reversal and a new trial ordered. The jury was subjected to improper influence which tainted its verdict. The Court of Appeals has held that even well-intentioned jury conduct may result in improper influence sufficient to impeach a jury verdict (*People v Brown,* 48 NY2d 388). "In each case the facts must be examined to determine the nature of the material placed before the jury and the likelihood that prejudice would be engendered" (*id.,* at p 394). The information that the codefendant had pleaded guilty is directly related to the issue of defendant's guilt or innocence for it is suggestive of defendant's guilt (see *People v Barber,* 81 AD2d 943). Here, as in the *Barber* case, there were no curative instructions given to the jury to remove the taint. In the case at bar the evidence was conflicting concerning what was said and when it was said. Two jurors testified that they heard another juror say, "Well, if one pleads guilty, the other must be guilty". If the information was disclosed before the jury reached its final verdict, it "may well have been determinative" (*Bulger v McClay,* 575 F2d 407, cert den 439 US 915). The likelihood of prejudice in these circumstances was substantial. Moreover, it is significant that several jurors failed to reveal to the court during the trial the information communicated to them and that the jury found it necessary to return to the court during deliberations for further instructions. Judgment reversed, on the law, and a new trial ordered. Sweeney, Mikoll and Levine, JJ., concur.

Mahoney, P. J., and Kane, J., dissent and vote to affirm in the following memorandum by Mahoney, P. J. Mahoney, P. J. (dissenting). Since, in our view, we find no fault with the ruling made by the trial court denying defendant's motion to set aside the verdict, we dissent from the majority's statement and would affirm the judgment of conviction. The subject of improper conduct affecting a jury's deliberations and the substantial rights of a defendant does not lend itself to ironclad rules which can be applied to varying fact patterns. The facts of each particular case must be examined "to determine the nature of the material placed before the jury and the likelihood that prejudice would be engendered" (*People v Brown,* 48 NY2d 388, 394; accord *Marshall v United States,* 360 US 310, 312). In view of the individualized nature of the trial court's decision when ruling on a CPL 330.30 (subd 2) motion, and the fact that it involves an exercise of that court's discretion (see *Marshall v United States, supra; People v Buchanan,* 145 NY 1, 30), appellate courts should be reluctant to substitute their views for those of the trial court and should limit their review to a determination of whether there was an abuse of discretion as a matter of law. Turning to the facts of the instant case as developed at the posttrial hearing, we cannot say that the trial court abused its discretion in denying defendant's motion. Five of the jurors who participated in defendant's trial testified. The first witness, Dawn Rolls, stated that

one of the jurors, whom she could not remember, had said something to the effect that if one codefendant pleaded guilty, then the other one must also be guilty. Rolls further testified that the fact of Steven Gordon's pleading guilty, which came up toward the end of the jury's deliberations, did not influence her determination of defendant's guilt and that it was the general feeling of the entire jury that it would not enter into their deliberations in any way. The second juror who testified, Marilyn Barnett, also heard one of the jurors say that defendant must be guilty if Gordon pleaded guilty. Barnett attributed the statement to Lucille Giles and thought that the knowledge of Gordon's plea had changed Giles' vote regarding defendant's guilt. Barnett further stated that this information did not affect her vote and that she expressed her opinion to the entire jury that whatever may have happened regarding Gordon should not influence their actions in deciding defendant's guilt or innocence. Lucille Giles was the next witness to testify at the hearing. She recalled hearing about Gordon's guilty plea during the jury's deliberations but denied that it influenced her vote or that she made any comments to that effect. She maintained that her vote of guilty was based solely upon the evidence presented during the trial. Antoinette Oliva testified that the subject of Gordon's guilty plea arose only after the jury's final vote had been taken. She stated that the foreman then asked if that fact had influenced anyone and that all of the jurors said that it had not. The final witness to testify at the hearing was Robert Zemanek, the jury foreman. He recalled that it was Mrs. Giles who first mentioned near the end of the deliberations that Gordon had pleaded guilty. Zemanek stated that he and some of the other jurors asked her if that fact would influence her decision regarding defendant, and that she said it would not. The entire jury also indicated at the time that it would not affect their deliberations. Based upon this testimony, which is conflicting in many respects and involves questions of credibility, we find absolutely no basis for concluding that the trial court abused its discretion as a matter of law in finding that no substantial right of defendant was affected by the inadvertent disclosure during the jury's deliberations that codefendant Gordon had pleaded guilty. Since we find no merit to the other issues raised by defendant for reversal, the judgment convicting him of the crime of first degree rape should be affirmed.